UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| CLAY BEACH, et al., | Case No.: CV 08-416-N-EJL-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| JD LUMBER, INC. AND JEFFREY WEIMER, | |
| Defendants. | |

Currently before the Court are: (1) Defendants' Motion for Protective Order (Docket No. 35); (2) Plaintiffs' Motion to Compel (Docket No. 39); and (3) Plaintiffs' request for relief under Federal Rules of Civil Procedure 56(f) ("Rule 56(f)") (Docket No. 29-2 at 4., n.1; Docket No. 29-17).[1] These non-dispositive matters have come before the undersigned United Sates Magistrate Judge pursuant to a referral from United States District Judge Edward J. Lodge (Docket Nos. 15, 43). The Court has carefully reviewed the record; considered the oral argument of counsel at the September 16, 2009 hearing; and now enters the following Order.

I. BACKGROUND

This case is filed pursuant to the Worker Readjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109. *Amended Complaint*, ¶ 1.1 (Docket No. 21); *Answer to Amended Complaint*, p. 2 (Docket No. 22). At issue is whether Defendants lawfully

---

[1] The parties have also filed cross-motions for summary judgment (Docket Nos. 26, 32). Those motions will be considered at a later date.

**MEMORANDUM DECISION AND ORDER - 1**

terminated Plaintiffs prior to the end of a 60-day period following issuance of a notice of mass layoff and plant closure.

Plaintiffs allege that on August 2, 2008, JD Lumber distributed a document entitled, "60-Day Notice to All JD Lumber Employee's [sic] of a Mass Layoff." *Amended Complaint*, p¶ 5.1 (Docket No. 21). Defendants allege that a verbal notice was provided and a written notice mailed on August 1, 2008. *Answer to Amended Complaint*, p.8 (Docket No. 22). It is undisputed that the written notice states, "[d]ue to an asset purchase sale with a competitor whereby the competitor is purchasing the sawmill plant, property, and equipment you are receiving this notice pursuant to federal law." *Amended Complaint*, ¶ 5.3 (Docket No. 21); *Answer to Amended Complaint*, p. 8 (Docket No. 22).

The competitor that purchased JD Lumber's assets is Riley Creek Lumber Company ("Riley Creek"). *Amended Complaint*, ¶ 5.4 (Docket No. 21); *Answer to Amended Complaint*, p. 8 (Docket No. 22). Defendant Jeffrey Weimer,[2] the owner of JD Lumber, told Plaintiffs at the time he gave them verbal notice of the plant closure that he would be working for Riley Creek. *Id.* Plaintiffs allege, and Defendants deny, that Weimer also stated that his main priority was to develop the Riley Creek log yard and that JD Lumber's log contracts with Potlatch Corporation would be transferred to Riley Creek the next day. *Id.*

It is undisputed that on August 22, 2008, before the 60-day notice period had run, Defendant JD Lumber issued a second notification indicating to all members of the swing shift, "JD Lumber is laying you off, effective end of shift on August 22, 2008." *Amended Complaint*,

---

[2] Jeffrey Weimer was originally named as a Defendant in this lawsuit and Plaintiffs have conceded that he should be dismissed. *See Plaintiffs' Response to Defendants' Motion for Summary Judgment*, p. 1, n. 1 (Docket No. 29). Because he has not yet been dismissed, he is referred to as a defendant herein.

**MEMORANDUM DECISION AND ORDER - 2**

¶ 5.5 (Docket No. 21); *Answer to Amended Complaint*, p. 9 (Docket No. 22).  The reason given for the layoff was that "due to unforseen business circumstances caused by a sudden, dramatic, and unexpected weather and market conditions affecting the entire lumber industry in this area, JD Lumber is, at this point, running only one shift because of a lack of logs." *Id.*[3]

Plaintiffs allege and Defendants deny that on or before the second notification, Defendants had been diverting logs away from JD Lumber. *Amended Complaint*, ¶ 5.7 (Docket No. 21); *Answer to Amended Complaint*, p. 9 (Docket No. 22).  Thus, Plaintiffs argue, there was no "unforseen business circumstances," that required a layoff of the second shift prior to the end of the WARN notice period, because Defendants created the log shortage they claim justified terminating Plaintiffs' employment. *Amended Complaint*, ¶ 5.7, 5.8 (Docket No. 21).

In the instant set of motions, the parties dispute whether Plaintiffs should have complete access to two documents, the Amended and Restated Asset Purchase Agreement ("Asset Purchase Agreement") and Master Log Purchase Agreement (collectively "the Agreements"). Defendants have provided Plaintiffs with the Agreements in redacted form.[4] *Memorandum in Support of Motion for Protective Order*, p. 2 (Docket No. 35-2).  Plaintiffs seek production of the redacted information and any other communications responsive to their Request for Production No. 4 ("R.F.P. No. 4"). *Affidavit of David Whedbee Pursuant to Rule 56(f)*, ¶¶  8-9 (Docket No. 29-17) No. 4; *Plaintiffs' Response to Defendants' Motion for Protective Order and Memorandum in Support of Motion to Compel*, p. 4 (Docket No. 38).

---

[3]  The WARN Act allows for a reduction of the notification period "if the closing of mass layoff . . . is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A).

[4]  Defendants have submitted to the Court for *in camera* review copies of the Agreements without redactions.  *See* Ex. A, *Affidavit of Stephen L. Adams in Support of Motion for Protective Order* (Docket No. 36).

**MEMORANDUM DECISION AND ORDER - 3**

Defendants filed a Motion for Protective Order seeking to prevent disclosure of the redacted portions of the Agreements. Defendants argue that: (1) the unredacted information is not relevant to the lawsuit, and, (2) even if it were, the information is of such a highly sensitive nature that the Court should nonetheless protect it from disclosure. *Memorandum in Support of Motion for Protective Order*, pp. 2-4 (Docket No. 35-2). In addition, Defendants state that there are no other documents responsive to RFP No. 4.

## II.  ANALYSIS

### A.  Discovery Request

On December 23, 2008, Plaintiffs served RFP No. 4 seeking production of "all communications and/ or documents between defendant Jeff Weimer and principals and/or agents of Riley Creek . . . that concern the sale of assets of JD Lumber to Riley Creek . . . and/or any successor interest to Riley Creek." *See* Ex. A, *Declaration of David Whedbee*, ¶ 3 (Docket No. 38-2). On January 28, 2009, Defendants objected that the request was "not reasonably calculated to lead to the discovery of admissible evidence," that it was "overbroad, vague, and burdensome," and that it sought "information protected by the attorney-client privilege." *Id.* at Ex. B, ¶ 4.

The parties conferred and on March 13, 2009, Defendants agreed to supplement their response with the Asset Purchase Agreement. *See Affidavit of David Whedbee Pursuant to Rule 56(f)*, ¶ 5 (Docket No. 29-17). In April, Defendants requested that a protective order be put in place before they would produce the document. *Id.* at ¶ 6. The parties then negotiated a stipulation that was submitted to the Court and a related protective order was issued on April 29, 2009. *Id*. Nonetheless, Plaintiffs did not obtain a copy of the Asset Purchase Agreement until June 10, 2009, after Plaintiffs had deposed Jeffrey Weimer and one day before Plaintiffs'

**MEMORANDUM DECISION AND ORDER - 4**

response to Defendants' motion for summary judgment was due. *Id.* at ¶¶ 6-8. Defendants produced the Asset Purchase Agreeement in redacted form. *Id.* ¶ 9.

In addition, despite the discovery request, Plaintiffs did not learn about a separate "Master Log Purchase Agreement" between JD Lumber and Riley Creek until the Weimer deposition on May 1, 2009. *Id.* at ¶ 7. The Master Log Agreement was included in the June 10, 2009 production, also in redacted form. *Id.* at ¶¶ 8, 10.

The redacted information includes: (1) portions of the Asset Purchase Agreement identifying the purchase price Riley Creek agreed to pay for JD Lumber's assets and the manner in which it would be paid; (2) a section of the Asset Purchase Agreement entitled, "Covenant of Non-Competition," (3) the "Covered Log Price" set forth in the Master Log Purchase Agreement; and (4) certain bonuses to be paid to the "Former JD Forestry Team" also set forth in the Master Log Purchase agreement. *Id.* at ¶ 9; Exs. BB, CC, *Affidavit of David Whedbee* (Docket No. 31). Plaintiffs also believe that there ought to be more documents responsive to R.F.P. No. 4. Specifically, Plaintiffs are interested in the documents evidencing negotiations between JD Lumber and Riley Creek, correspondence and preliminary drafts of the Asset Purchase Agreement that Plaintiffs argue might demonstrate what JD Lumber controlled and what market conditions were "foreseeable" at the time of the asset sale.

**B.   General Standards**

Federal Rule of Civil Procedure states that, in general, any matter relevant to a claim or defense is discoverable. "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b). Moreover, relevancy does not mean admissibility: "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

The general rules is not, however, without limitation. Upon a showing of good cause, the Court in the exercise of its discretion may issue any protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including any order prohibiting the requested discovery altogether, limiting the scope of the discovery, or fixing the terms of disclosure. *See* Fed.R.Civ.P. 26(c). Plaintiffs' burden is to "show good cause" by demonstrating harm or prejudice that will result from the discovery. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir.2004). "For good cause to exist, the party seeking protection bears the burden of showing what specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

Consistent with the above standards, the Court will conduct a two part inquiry. First, it is necessary to determine whether the information sought is relevant under Rule 26(b). If so, then the Court determines whether disclosure should be otherwise limited or even prohibited due to the alleged highly sensitive nature of the contested information..

**C.     Relevancy**

Defendants argue the redacted information is not relevant to this lawsuit, which is focused on two discrete issues: (1) whether the WARN Act applies to the 40 employees who worked the swing shift and were laid off on August 22, 2008 or (2) if the WARN Act applies, whether the unforeseen business circumstance exception of 29 U.S.C. § 2102(b)(2) shields Defendants from liability. In addition, Defendants argue that there are no other documents responsive to Plaintiffs' RFP No. 4. Plaintiffs argue that the redacted information is relevant to the economic incentives Defendants had to limit the logs available to the JD Lumber mill facility and terminate the Plaintiffs prior to the 60-day notice period.

**MEMORANDUM DECISION AND ORDER - 6**

### 1. The Sales Price is Not Relevant to this Lawsuit.

Plaintiffs argue that the purchase price is relevant, because it would demonstrate the strong financial incentives Defendants had to enter the asset purchase sale and, ultimately, divert logs away from JD Lumber to satisfy the needs of Riley Creek.  *Plaintiffs' Response to Defendants' Motion for Protective Order and Memorandum in Support of Plaintiffs' Motion to Compel*, p. 1 (Docket No. 38).  Plaintiffs further argue that the evidence reflects that JD Lumber controlled the circumstances surrounding the mill closure and belies Defendants' chief defense that unforeseen circumstances caused Plaintiffs to be terminated prior to the 60-day period provided under the WARN Act.

Defendants reply that, "there is no logical reason that Plaintiffs need to know how much was paid to JD Lumber regarding the sale of its assets.  Whether it was $ 5,000,000 or a peppercorn, it makes no difference."  *Memorandum in Support of Motion for Protective Order*, p. 3 (Docket No. 35-2).

This Court finds that the Plaintiffs have not met their burden and shown how discovery of the purchase price "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  Obviously, there was an incentive for JD Lumber to enter the Asset Purchase agreement; otherwise the company would not have done so.  Further, the Court is not persuaded that the detailed purchase price information would have any bearing on the issue of whether the second shift was terminated due to insufficient logs.  Therefore, the motion to compel is denied in this regard.

### 2. Covenant Not to Compete

Plaintiffs argue that the information regarding the covenant not to compete would reflect that Weimer, following the sale of JD Lumber, planned to leave the business of milling lumber

**MEMORANDUM DECISION AND ORDER - 7**

and engage in the business of selling lumber. According to Plaintiffs, such information would further support their argument that Defendants had incentives to divert logs away from JD Lumber.

With regard to the terms of the non-compete clause, Defendants argue:

> The purpose of his case is to determine whether the Plaintiffs were properly terminated. There is nothing about a clause in the Asset Purchase Agreement which defines JD Lumber's duties after the sale is consummated that is relevant to whether the employees were properly terminated before the sale is consummated.

*Id.* at p. 4.

Originally, in its preliminary rulings from the bench, the Court concluded that the Plaintiffs have not shown how discovery of the covenants not to compete "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The Court was of the opinion then that such indication had no bearing on the issue of whether the second shift was terminated due to insufficient logs. However, after further consideration of the issue, the Court is persuaded that there exists the possibility that the terms of the covenant not to compete could contain information that might be argued to have created a financial incentive for the Defendants, or any one of them, to use less than the best efforts to direct logs to the JR Lumber mill, thus creating a circumstance where such information might be reasonably calculated to lead to the discovery of admissible evidence as to whether or not the closure of the second shift was for reasons controlled by the Defendants, rather than unanticipated market conditions. Therefore, the motion to compel is granted in this regard.

   3.   **Covered Log Price**

The Court finds that the redacted information concerning the Covered Log Price in the Asset Purchase Agreement and the Master Log Agreement, and any other information

**MEMORANDUM DECISION AND ORDER - 8**

concerning the supply and purchase of logs between JD Lumber and Riley Creek, "appears reasonably calculated to lead to the discovery of admissible evidence" and must be produced.

Defendants have argued in great detail how the Plaintiffs misunderstand the terms of the asset purchase sale and the different categories of logs available to JD Lumber from where and when. Defendants have also argued that the covered log price had nothing to do with the availability of logs. The Court finds that these arguments reflect an interpretation and advocate's argument upon such facts. Plaintiffs cannot counter such arguments without knowing the facts and the prices to be paid for logs could be exactly the sort of financial conflict of interest that Plaintiffs contend was at play in this case. Therefore, such information could lead to admissible information concerning the availability of log and is relevant to both the Plaintiffs' claims and the defenses raised.

**4.      Bonuses Paid to Former JD Forestry Team**

At the hearing, Plaintiffs conceded that this information was not relevant to their claims. Therefore, the motion to compel is denied in this regard.

**5.      Other Responsive Documents**

The Court accepts Defendants contention that there are no additional documents responsive to RFP No. 4, as that interrogatory was framed. (The Court has not reviewed the definition section of the written discovery to see if the interrogatory is subject to a broader reading.) Plaintiffs argue that there must be additional documents evidencing the back-and-forth sales negotiations between JD Lumber and Riley Creek. In response, Defendants state that Jeffrey Weimer does not have an email address and conducted all of his communications over the telephone and through his attorney.

**MEMORANDUM DECISION AND ORDER - 9**

RFP No. 4 seeks "all communications and/ or documents between defendant Jeff Weimer and principals and/or agents of Riley Creek . . . that concern the sale of assets of JD Lumber to Riley Creek . . . and/or any successor interest to Riley Creek."  *See* Ex. A, *Declaration of David Whedbee*, ¶ 3 (Docket No. 38-2).  On its face, this discovery request does not appear to include communications between Weimer's attorney and Riley Creek.  Therefore, the Court is satisfied with Defendants response.

**D.     Protective Order**

Because the redacted portions of the agreements relevant to the Covenant Not to Compete and Covered Log Price are discoverable, the Court must consider whether Defendants have demonstrated good cause for prohibiting disclosure under Rule 26(c).  For the reasons set forth below, the Court finds that Defendants' Motion for Protective Order should be denied in this regard.  While there is some merit to the Defendants' argument concerning the prejudice or embarrassment that may occur if this information were disclosed, the risk of disclosure in the instant case is quite minimal.

Defendants argue that the disclosure of the redacted information, whether accidental or intentional, would cause undue embarrassment to Defendants.  *Memorandum in Support of Protective Order*, p. 2 (Docket No. 35-2).  Defendants state that Jeffrey Weimer lives near the JD Lumber facility in the small town of Priest Lake and his ability to deal with his neighbors would be significantly impacted if any aspect of the sale price of JD Lumber was disclosed.  *Id.* at pp. 4-5.  Moreover, a motion for sanctions would be ineffective in undoing the damage that would result to his reputation.  *Id.* at p.5.  In addition, Defendants argue that the Court "should consider the impact possible disclosure will have on the buyers of JD Lumber's assets."  *Id.*  "[T]he impact on [sic] how much or little they spent to purchase JD Lumber's assets could

**MEMORANDUM DECISION AND ORDER - 10**

significantly impact their relationships with people in their communities, and could cause significant embarrassment, harassment, or oppression." *Id.*

These arguments do not persuade the Court that discovery of the Covenant Not to Compete and Covered Log Price should not be allowed.  First, there is a protective order governing the disclosure of documents in this case.  *See Protective Order* (Docket No. 24).  This protective order limits access to confidential material to counsel, their clerical staff, and any experts; as well as the original authors, addressees, or recipients of the information.  *Id.* at p. 2.  The parties themselves are not allowed access to this information.  Second, Plaintiffs' lead counsel is located in Seattle, Washington and "local" counsel is located in Boise, Idaho.  Therefore, to the extent an inadvertent disclosure is made, the risk that such information would spread to the community of Priest Lake is minimal.  Third, the attorneys on both sides of this action understand their responsibilities under the protective order and Defendants' concern regarding the disclosure of any confidential or sensitive information.

For the above reasons, the Court must deny Plaintiffs' motion for protective order as it applies to the Covenant Not to Compete and Covered Log Price.

**E.     Rule 56(f) Relief**

Plaintiffs have requested relief under Rule 56(f), because they received the redacted versions of the Asset Purchase Agreement and Master Log Agreement on June 10, 2009, the day before their response to Defendants' motion for summary judgment was due.  *Plaintiffs' Statement of Facts in Support of Response to Defendants' Motion for Summary Judgment*, p. 4, n.1 (Docket No. 29-2).   Plaintiffs also ask that the Court preserve the possibility that discovery might be reopened in the event the Court orders Defendants to produce te redacted information.

**MEMORANDUM DECISION AND ORDER - 11**

*Plaintiffs' Response to Defendants' Motion for Protective Order and Memorandum in Support of Motion to Compel*, p. 10 (Docket No. 38).

Rule 56(f) allows a party opposing summary judgment to seek relief if it "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). The court may: (1) deny the motion; (2) order a continuance to allow further discovery; or (3) issue any other order justified under the circumstances. *Id.*

In the instance case, it is not clear how that the redacted portions of the Covenant Not to Compete and Covered Log Price ordered to be produced in this Order will affect Plaintiffs' arguments concerning summary judgment. Nonetheless, the Court is troubled by the fact that Plaintiffs did not receive the documents at issue, even in redacted form, until the day before their response to summary judgment was due. Therefore, Defendants must produce the information referenced in this Order, in a new and separate production of such documents, by the end of the work day on Thursday, September 24, 2009 and Plaintiffs may file a supplemental brief specific to the log purchase information, if necessary, on or before October 5, 2009. Defendants may file a response to Plaintiffs' brief on or before October 12, 2009.

**F.     Sanctions**

If the parties intend to further pursue an award of sanctions on the basis of this Order, then they must file a motion with the Court on or before September 28, 2009 demonstrating to this Court why sanctions are warranted.

### III.  CONCLUSION

In short, the Court finds that Defendants must produce the redacted information relating to the Covenant Not to Compete and Covered Log Price, because this information appears reasonably calculated to lead to the discovery of admissible evidence. In addition, because the

**MEMORANDUM DECISION AND ORDER - 12**

Court finds the risk of disclosure low and a protective order is already in place, Defendants' motion for protective order must be denied in this regard.

Moreover, because Plaintiffs did not have the benefit of this information and had little time to consider the redacted Agreements when formulating a response to Defendants' motion for summary judgment, Plaintiffs may file a supplemental brief in opposition to Defendants' motion for summary judgment. However, this supplemental response must be specific to the information discovered in, or on account of, the Agreements.

## IV. ORDER

In accordance with the foregoing, it is here by ORDERED:

1.  Defendants' Motion for Protective Order (Docket No. 35) is GRANTED in part and DENIED in part. The Motion is denied to the extent that Defendants are ordered to produce the redacted information relevant to the Covenant Not to Compete and Covered Log Price;

2.  Plaintiffs' Motion to Compel (Docket No. 39) is GRANTED in part and DENIED in part. The Motion is granted to the extent that Defendants are ordered to produce the redacted information relevant to the Covenant Not to Compete and Covered Log Price; and

3.  Plaintiffs' Motion for Relief under Rule 56(f) is GRANTED to the extent that Plaintiffs may file a supplemental brief as outlined above, if necessary, on or before October 5, 2009. Defendants may file a response to Plaintiffs' brief on or before October 12, 2009.

DATED: **September 22, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**