UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

CLAY BEACH, et al,

        Plaintiffs,

vs.

JD LUMBER, INC.,

        Defendant.

No. CV-08-416-N-JLQ

MEMORANDUM OPINION;
FINDINGS OF FACT and
CONCLUSIONS OF LAW

This matter came regularly on for trial by the court in Coeur d' Alene, Idaho on the 3rd day of August, 2010 and concluded on August 4, 2010. The Plaintiffs appeared in person and with their attorneys Mel Crawford and David Whedbee of MacDonald, Hoague, & Bayless, Seattle, Washington, appearing *pro hac vice,* together with Robert Huntley, Esq. of Boise, Idaho. The Defendant appeared by Jeffrey Weimer, represented by attorneys Brian K. Julian and Stephen Adams of Anderson, Julian, & Hull, Boise, Idaho.

Evidence having been introduced and the court having heard the argument of counsel the court announced its oral decision for the Plaintiffs. The following represent the court's:

### Findings of Fact

The Defendant JD Lumber, Inc. is an Idaho corporation which for 26 plus years had continuously operated a lumber mill near Priest River, Idaho employing over 200 persons prior to its sale on or about August 2, 2008 and its closing on October 3, 2008. For the 26 years prior to its sale to Riley Lumber Company JD Lumber had operated its

ORDER - 1

mill twelve months per year with two shifts per day (a day shift and a night shift), five days per week. Except for a shutdown of the mill due to equipment or other failures, mill workers were employed two shifts per day without interruption. During its 26 years of operation the mill had never been shut down nor shifts reduced from two per day to one per days for any reason including a shortage of logs.

Commencing in the spring of 2008, the Defendant negotiated with Riley Lumber Company to the end that the Priest River mill and assets would be sold to Riley and the mill closed. By Agreement dated August 5, 2008, JD Lumber, Inc. agreed to sell all of its Priest River mill assets including real property, machinery, and inventory to Riley Lumber Company of Orofino, Idaho. That sale was publically announced in the area newspapers. By reason of the sale to Riley Lumber Company, on August 3, 2008, JD Lumber gave all of its employees, including the Plaintiffs, the sixty (60) day Notice required by the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, informing all of its employees of the permanent mass layoff and termination of all employees effective October 3, 2008.

JD Lumber continued to operate the Priest River mill two shifts per day on an ongoing basis until Friday, August 22, 2008, when it immediately terminated the employment of the 40 Plaintiffs working the night shift. The alleged reason for termination of these employees within the 60 day WARN period was an insufficient supply of logs to run the mill for two shifts per day and the "poor market conditions." At no prior time in the history of the 26 year operation of the Priest River mill had employees been laid off due to an insufficient supply of logs. There was no evidence that the Defendant had made a concerted effort to obtain logs prior to the termination of the Plaintiffs. However, following the termination of the employees, the Defendant ran newspaper ads in early September, 2008, stating that they were "still buying logs." There was no evidence of the running of such logs solicitation ads prior to the termination of the Plaintiffs on August 22, 2008 for an alleged shortage of logs. Contrary

ORDER - 2

to the Defendant's position that it had laid off the night shift due to an inability to obtain logs, in the period following the Plaintiffs' August 22, 2008 termination the Defendant sold 2,444,902 board feet of logs it owned to its competitors. A night shift ordinarily processed 165,000 board feet of lumber per shift. The court concludes that the running of ads "that it was still buying logs" after the termination of the Plaintiffs' employment was a *post facto* effort by the Defendant to support its position that the termination of the Plaintiffs was due to a shortage of logs, rather than, in fact, the impending termination of all log milling operations which had been previously scheduled for September 25, 2008 as part of the closing of the mill.

The Defendant did not produce reliable and sufficient evidence to satisfy the court that the layoff of the Plaintiffs on August 22, 2008, was the result of unforseen business circumstances. Rather, the court finds that the motivating factor in the claimed lack of log supply and the layoff of the night shift within the 60 day WARN period was the sale of the mill and its assets and the scheduled termination of mill operations set for September 25, 2008.

Pursuant to the stipulation of the parties the Plaintiff's back pay from August 24, 2008 to October, 2008 was in the amount of $86,220. The court finds that pursuant to 29 U.S.C. § 2104(a)(6), the Plaintiffs are the prevailing party and are entitled to recover a reasonable attorney's fee.

## Discussion

In its pretrial and trial briefing the Defendant has taken the position that since on August 22, 2008, it terminated only 40 of its 200 employees, all of whom had previously been given the WARN notice, the termination within the 60 day period did not violate the WARN Act even if the actual reason for the termination was the plant sale and closing as has been found by this court. That position has been previously rejected by Judge Lodge in the Order Adopting Report and Recommendation (Doc. 75), p. 5 and is also rejected by this court. Judge Lodge's reasoning in that Order is a correct

ORDER – 3

interpretation of the WARN statute and this court adopts that ruling. A finding approving the periodic termination of less than 50 previously WARNed employees at a time because of a plant sale and closing would render that Act a nullity.

The WARN Act provides in part that "an employer shall not order a plant closing or mass layoff until the end of a 60 day period after the employer serves written notice of such an order . . . to each affected employee." 29 U.S.C. § 2102(a). A violation of the Act entitles each employee to recover back pay for each day of violation. 29 U.S.C. §2104(a)(a). In addition, the court may, pursuant to 29 U.S.C. § 2104(a)(6), award aggrieved employees their reasonable attorney fees incurred. The court has found that the "good faith" exception to a violation of the Act has not been established pursuant to 29 U.S.C. § 2104(a)(4) and therefore the Plaintiffs' lost wages of $86,220 should not be reduced.

The court has also found that the true and factual reason for the early layoff of 40 employees during the 60 day WARN period was the sale and closing of the mill, rather than "unforseen business circumstances," as referenced in 29 U.S.C. § 2102(b)(2)(A). Being an exception to the WARN Act, the exception is to be construed narrowly so as not to eviscerate the real purpose of the Act. *Local Union 7107 v. Clinchfield Coal Co.*, 124 F. 3d 639, 641 (4th Cir. 1997). A party claiming existence of the exceptional circumstances has the burden of proof. *Childress v. Darby Lumber, Inc.*, 357 F. 3d 1000, 1008 (9th Cir. 2004). The Department of Labor has issued a regulation, 29 C.F.R. § 639(9), concerning the "unforseen business circumstances" exception providing in part:

> An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. A principal client's sudden and unexpected termination of a major contract with the employer, and an unanticipated and dramatic major economic downturn might each be considered a business circumstance that is not reasonably foreseeable. A government closing of an employment site that occurs without prior notice also may be an unforeseeable business circumstance.

ORDER - 4

> The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market. The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its product or services.

As found by this court, the Defendant did not establish the existence of the exception. The court has determined that the termination of the 40 Plaintiffs on August 22, 2008 was by reason of the Defendant's failure to obtain and maintain an adequate supply of logs and that this was in contemplation of the closing of the mill.

The attorney fee language in the WARN Act has been accurately described as being "virtually identical" to the fee shifting language in many civil rights cases. *United Steelworkers v. North Star Steel Co., Inc.*, 5 F. 3d 39, 44 (3rd Cir. 1993). This court cited counsel to *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Hensley*, at 429, held that where a fee-shifting statute applies, the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." No such special circumstances exist in the matter *sub judice*.

In its oral opinion this court cited counsel to the wise admonition of Justice Lewis Powell, a former President of the American Bar Association In *Hensley* at 437, Justice Powell advised:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.

This court also cautioned counsel about a "second major litigation" in setting a reasonable attorney fee. This court recognizes that this matter was diligently prosecuted and defended by able and experienced counsel with many more billable hours being expended on both sides than the $86,220 at issue would seem to warrant. That is a choice that the parties elected and it appears to the court that what may, at first blush, appear to be a disproportionate attorney fee, may be appropriate in this case due to the extensive nature of the litigation. This court also advised the parties and counsel that in some cases, where a "second major litigation" arises in the determination of a reasonable

ORDER - 5

attorney fee, the fees charged by the losing party may be relevant in determining if the attorney fee request of the prevailing party is reasonable. However, that observation by the court should not be construed as authorizing, at this point, inquiry into attorney fees expended by the Defendant. The rule of law also recognizes that the time and monies expended in the establishment of the amount of reasonable attorney fees may, in appropriate cases, also be recovered by the prevailing party.

## Conclusion

The Plaintiffs are entitled to judgment against the Defendant in the amount of $86,220. The Plaintiffs are also entitled to recover their reasonable attorney fees. In the event the parties are unable to agree on the amount of attorney fees to be awarded, the Plaintiffs shall file their application and supporting documentation within twenty (20) days from the date of this Order. The Defendant shall file any response and documentation within fifteen (15) days after receipt of the Plaintiff's application. The court will then determine the matter without further argument or testimony, unless requested by a party and granted by the court. The court will thereafter direct the entry of final judgment.

The Clerk shall enter this Order and furnish copies to counsel.

Dated this 24th day of August, 2010.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 6